## JONATHAN L. BOOTH, Respondent, *v.* THE FARMERS AND MECHANICS' NATIONAL BANK OF ROCHESTER, Appellant.

*Joint obligation — what will operate as payment of — Assignment of judgment — reservation in.*

Payment by one of the obligors, of an obligation which as between the parties is joint, enures to the benefit of all, and the party so paying cannot keep the debt alive as against the others by taking an assignment of the same either to himself or to a third person.

Defendant recovered a judgment against four partners upon a note for which all were jointly liable. Subsequently the plaintiff, knowing the relation existing between the partners, took, at the request and pursuant to negotiations of Flint, one of the partners, with defendant, an assignment of the judgment from the defendant, paying nothing therefor to the defendant, but transferring certain land to Flint. The assignment provided that the assignee should not have any right or claim against Flint, and that it should not affect Flint's liability to the defendant. Flint paid the amount of the judgment to the defendant either at the time of the assignment to plaintiff or some time thereafter, when a satisfaction-piece was given by defendant, and the judgment was discharged of record. *Held,*

That payment of the judgment by Flint operated to discharge it as to all the partners.

That defendant was not liable to plaintiff for executing such discharge, notwithstanding it was shown that the other judgment debtors had property upon which such judgment, if not discharged, would have been a lien.

Appeal from a judgment in favor of the plaintiff, entered upon a verdict directed by the court. The case has already been reported in 4 Lansing, 301; 50 New York, 396; 65 Barbour, 457; 1 Thompson & Cook [Sup. Ct. Rep.], 45.

*H. R. Selden,* for the appellant.

*W. F. Cogswell,* for the respondent.

Talcott, J.:

The complaint in this action, which is what would formerly have been known as an action on the case, alleges that the defendant, on or about the 29th of December, 1860, recovered a judgment in the Supreme Court against Archibald McLean, Hector McLean and Theodore S. Goddard, impleaded with Charles L. Flint, for the sum of $3,503.21 damages and costs, docketed in the county of Monroe, and that a transcript thereof was duly docketed with the clerk of the county of Livingston, December 31, 1860; that on the 11th of December, 1861, the said judgment still being in full force and wholly unsatisfied, the defendant, for a valuable consideration, assigned all its right, title and interest in the said judgment to the plaintiff; that after the recovery and docket of the judgment the said McLeans and Goddard, or some of them, were seized of certain real estate in the counties of Monroe and Livingston, and especially that said Goddard was seized of certain real estate, describing various parcels thereof, each situated in one of said counties, which real estate but for the discharge of said judgment, as thereinafter set forth, would have been subject to the lien of said judgment, and would and might have been sold to satisfy the same, but that by reason of said discharge Goddard was enabled to and did sell and convey certain portions thereof to *bona fide* purchasers, who took the same without notice of the assignment of the judgment to the plaintiff, or of any defect in the discharge of the said judgment. It is also averred that the defendant did, on or about April, 1864, receive the amount of the said judgment with interest, without stat-

ing from whom the said amount was received or for what purpose. This receipt is stated to have been before the 11th day of April, 1864. The complaint then alleges that on the 11th day of April, 1864, the defendant discharged the said judgment by a discharge duly executed and acknowledged, and that such discharge was on the 12th day of April, 1864, filed with the clerk of Monroe county, and the said judgment was thereupon duly discharged of record; that the said McLeans and Goddard are wholly insolvent, and that the judgment cannot be collected of them, or either of them; wherefore, the plaintiff avers that he has lost the judgment, which otherwise might have been collected, and has sustained damages to the amount of the judgment and interest, for which he demands judgment.

On the trial the plaintiff gave in evidence a judgment roll recovered by default for want of an answer, with proof of service of the complaint upon the McLeans and Goddard. The complaint in that action was against the McLeans and Goddard and Charles L. Flint, and set forth as the cause of action a promissory note for $3,400 made by the McLeans and Goddard, and payable to the order of Flint, and indorsed by Flint to the defendant. The plaintiff also proved the docket of the said judgment in Monroe county, on the 29th of December, 1860, as a judgment in favor of the defendant against the McLeans and Goddard, impleaded with Charles L. Flint, for $3,480.07 damages and twenty-three dollars and fourteen cents costs.

The plaintiff then proved an assignment of the judgment by the president of the defendant, dated December 14, 1861. The assignment was entitled in the action, giving as the defendants' names the McLeans and Goddard, impleaded with Flint, and was as follows: "For a valuable consideration the Farmers and Mechanics' Bank of Rochester does hereby sell, assign, transfer and set over unto J. L. Booth all the right, title and interest of the said bank in, to and under said judgment, always saving, reserving and providing that the said assignee shall not have, nor shall this assignment transfer to him, any right or claim against Charles L. Flint, who was an indorser on the note on which this judgment was obtained, nor affect his liability to said bank."

The plaintiff then proved a satisfaction-piece of the said judg-

ment, executed by the president of the defendant, dated and acknowledged on the 11th of April, 1864, in which the judgment was described as against the McLeans, Goddard and Flint, without the use of the word impleaded, and in which the judgment was stated to be against Charles L. Flint and others.

The plaintiff then proved a deed of certain lands in Monroe county from one George W. Richards to said Theodore L. Goddard, for the consideration of $400, dated and recorded in August, 1866, and a deed from Goddard and wife to one Newell R. Skinner, dated and recorded in February, 1867, and gave evidence tending to show that Skinner paid $400 for the premises, and that they were worth that amount, and rested his case. The plaintiff had given no proof of the payment of any money to the defendant, except as it would be inferred from the recital in the assignment to the plaintiff and from the satisfaction-piece. It appears that when the plaintiff rested the counsel for the defendants asked the plaintiff's counsel to elect on what ground he claimed to recover.

The plaintiff's counsel stated in reply that he claimed to recover for the wrongful satisfaction of the judgment. First. The full amount of the judgment, on the ground that the defendant had received the same. Second. The amount which the plaintiff had lost by the discharge of the judgment, to wit, $400 and interest. The court then ruled that the plaintiff must recover for the wrongful satisfaction of the judgment, and that, as the case then stood, the only question was the amount of damages. The defendant proved the record of a judgment by default against Charles L. Flint upon the same complaint contained in the record introduced by the plaintiff, but upon proof of service of the summons and complaint, on Flint, on the 25th of January, 1861. This judgment was for $3,514.48 damages, with one dollar and ninety-two cents costs and disbursements, amounting in all to $3,516.40, and was obtained, apparently, upon a severance of the action originally commenced against the McLeans, Goddard and Flint, by reason of the non-service in the first instance upon Flint.

The defendant then read in evidence the depositions of the plaintiff, of Charles L. Flint, Archibald H. McLean and Theodore S. Goddard, it having been proven that Hector McLean, one of the makers of the note on which the judgment was recovered, and

Jacob Gould, the president of the defendant, who had executed the assignment of the judgment to the plaintiff, and the satisfaction-piece of the same, had both died previous to the commencement of this action. The plaintiff testified that he knew Flint, Archibald H. McLean and Goddard, and had been jointly interested with Flint in the sale of patent-rights. That the assignment of the judgment was delivered to him, the plaintiff, by Mr. Gould, the president of the defendant, on or about the day of its date. That the negotiation, whereby the assignment was procured, was made by Flint with the bank and its attorney. That he understood from Flint that he had arranged with the bank concerning the judgment before the assignment, and that he, the plaintiff, paid nothing to the bank, but that he gave for the assignment a release to Flint of his, the plaintiff's, interest in 1,100 acres of land situate in Iowa, Wisconsin and Minnesota, which he and Flint had theretofore owned in common. That McLean, Goddard and Flint were engaged in some grain operations, and Flint told him that the note on which the judgment was recovered was made to be discounted by the defendant's bank, and were to be, and were, used in the joint business of the McLeans, Goddard and Flint, and that he supposed at the time that the McLeans and Goddard were irresponsible; that he understood the judgment was against all four of the defendants, and did not regard it as good for any thing at the time, but thought Goddard might be good for it at some time.

The witness Charles L. Flint testified that himself, Archibald McLean and Goddard were in partnership during the year 1860, and for about two years, buying and selling grain and dealing as commission merchants at Rochester and other points. That the firm name was "C. L. Flint & Co.," though he thinks sometimes the name of "Flint & Goddard," and sometimes the name of "Flint, Goddard & Co.," may have been used as the style of the firm. That the note on which the judgment was recovered was given to raise money in the business of the firm, and was a "company matter," and the proceeds were used and applied in the business of the firm, and that he (the witness) had settled with and paid the bank, in full, the amount due on the said judgment. That he held the judgment against the McLeans and Goddard for the $3,400 note, and assigned the judgment held by him to Booth, the plaintiff, and that he sold

the judgment because he regarded it as of little value. That he paid the judgment against himself in April, 1864, and that such payment operated, so far as the bank was concerned, to satisfy the judgment obtained by the bank against the McLeans and Goddard. That he took from the president of the bank a certificate of the satisfaction of the judgment against himself, containing some reference to the judgment held by the bank against the makers of the note, and the witness was evidently under the impression that he had personally assigned the judgment to Booth, and had forgotten that the assignment was made by the president of the bank.

Archibald H. McLean testified that he was a partner with his father, Hector McLean, and that the said Hector and himself were interested together in the firm of McLean, Goddard & Flint, and that the note on which the judgment was recovered was made and used in the business of the firm for the purchase of barley shipped on joint account, and was indorsed by Flint for the same purpose. That Flint received the proceeds of the barley purchased, and had told the witness that he (Flint) had paid the judgment to the bank. This witness had no knowledge of the satisfaction-piece or the assignment. Goddard was also examined, and testified, in substance, that he was connected with Flint and the McLeans in the purchase of grain, and that the $3,400 note was given in the business of the copartnership, and that Flint had agreed with the witness to satisfy the judgment against him (the witness), and afterwards told the witness he had done so. He knew nothing about the satisfaction or assignment.

The defendant then introduced in evidence a satisfaction-piece of a judgment for $3,516.43 damages and costs, which judgment was therein stated to be filed and docketed the 22d day of February, 1861, in the county of Monroe, entitled in the name of the defendant as plaintiff against "Charles L. Flint, impleaded" with the McLeans and Goddard, executed and acknowledged by Jacob Gould, president of the defendant, dated April 11, 1864, and filed in Monroe county clerk's office, April 12, 1864.

It was admitted that the handwriting of the assignment was that of the attorney of the bank, but the name of the assignee was inserted by another hand. The defendant, after certain offers not necessary to be mentioned, rested, and moved for a dismissal of the

complaint on several grounds; amongst others, "because all the defendants in the judgment in question were partners, and payment by one of them satisfied the judgment."

The court, however, upon the request of the plaintiff's counsel, directed a verdict for the plaintiff for the $400, with interest, to which direction the defendant's counsel excepted.

It is undisputed that the note in question was made and indorsed to raise money for the use of the partnership composed of the makers and indorser, and that between the parties thereto it was a joint obligation of the partnership, and that the payment by any one of the joint debtors inured to the benefit of all, and satisfied the obligation, especially as it appears from the testimony of Flint that his intention was to satisfy the debt. However it may be in the case of a third person who has purchased the note or the judgment for value, having no notice of the actual relations of the parties to the debt, but relying upon the apparent relations upon the face of the paper, yet as between the parties themselves the debt was in equity a joint debt, and the rights of the parties as between each other the same as though the judgment had been recovered against them jointly; and that Flint could not, after having paid the judgment, keep the same alive as against his co-partners, either by having it assigned to himself or by using the name of a third person as assignee. The rule on this subject is fully and concisely stated in the case of *Harbeck* v. *Vanderbilt* (20 N. Y., 397, opin. of Selden, J.): "When one of several defendants, against whom there is a joint judgment, pays to the other party the entire sum due, the judgment becomes thereby extinguished, whatever may be the intention of the parties to the transaction. It is not in their power by any arrangement between them to keep the judgment on foot for the benefit of the party making the payment. If, therefore, in such a case, the latter take an assignment to himself, or unless under special circumstances even to a third person for his own benefit, the assignment is void and the judgment satisfied."

Flint at some time paid the money in full on this judgment to the bank. He knew and now admits as between the parties to the judgment it was the joint obligation of all, probably put into the form of a promissory note made by three of the parties, payable to the order of, and indorsed by, the other, in compliance with the

practice of banks which usually require such form. Flint, after having paid the debt, could not keep the judgment on foot for his own benefit by taking an assignment to himself or in the name of a third party. From the case it does not appear at what time the judgment was paid by Flint, but it is evident, according to the plaintiff's own testinony, that Flint claimed to have arranged with the bank and settled the judgment prior to the time when he procured the assignment to the plaintiff, who paid nothing whatever to the bank for the assignment, but did, as he claims, in consideration thereof, relinquish to Flint his (the plaintiff's) interest in some western lands which they owned together. The probability is that the money was paid to the bank about the time when its president executed the assignment to the plaintiff, and that, having an assignment made to a third party, was a scheme on the part of Flint to attempt to keep the judgment on foot against his co-defendants. But Flint knew all about the relations of the defendants in the judgment, and that they were in fact, as between themselves, jointly bound for the payment of the judgment. Booth, the plaintiff, it seems from his own testimony, was substantially informed of the real facts at the time of the assignment. He purchased the judgment, in fact, of Flint, after having been informed in substance that Flint had paid it to the bank. He paid no consideration for it to the bank, and acquired no better right to the judgment than Flint himself had or could sell. But suppose the money was not paid by Flint at or before the time of the assignment to the plaintiff, but was paid afterwards and at the time when the satisfaction-pieces of the two judgments — one against the makers and the other against the indorsers — were executed, on the 11th July, 1864, how does the case then stand? Flint, undoubtedly, paid the judgment. The assignment to the plaintiff was of the judgment as it appeared in form, against the makers only, and expressly provided that the assignee should not have, and that the assignment should not transfer to him, any right or claim against Flint, an indorser on the note on which the judgment assigned was obtained, "nor affect his liability to the bank."

The object of this reservation of the liability of Flint, the indorser, from the assignment of the judgment against the makers, after both judgments had been obtained, is not apparent, unless it

was intended as a part of an attempt on the part of Flint to keep the judgment alive as against his partners, after having paid it himself. It was, however, for aught we can see, a perfectly valid arrangement, if the parties saw fit to make it. If there was nothing about it, except what is disclosed, it does not seem to have been an agreement to which any objection lies, as being either *malum in se* or *malum prohibitum*. The assignment on the face thereof, then, placed the parties in this position: Booth, the plaintiff, was entitled to collect the amount of the makers, if he could, and the bank reserved to itself the right to collect and receive the amount of Flint, if it could. The other parties never paid any thing. Flint paid to the bank the whole amount of the judgment. The bank had a right to receive it, notwithstanding its assignment of the judgment against the other parties to the plaintiff by the express provisions of the assignment itself. The payment of the judgment by Flint was, as we have seen, a satisfaction thereof as against all the defendants, and the other defendants would have a right to demand satisfaction of the judgment so far as they were bound by it. The assignee who took the assignment with a reservation of the liability of Flint, not having paid the bank any thing for the assignment, and especially with notice of the relations of the parties to the debt, took it with a liability for all the consequences which might follow from the reservation by the bank to itself of the liability of Flint, and from his payment of the judgment. It is noticeable, also, in the case, that as Flint had received the proceeds of the barley purchased with the proceeds of the discount of the note, it seems to have been understood by the parties that Flint was to pay the debt to the bank, and that he informed some of his partners that he had paid the judgment, and they rested in this belief.

This only tends to show the propriety of the rule, that a payment by one of the obligors of an obligation which, as between the parties, is joint, inures to the benefit of all, and that the party so paying cannot keep the debt on foot as against the others. It properly becomes the subject of an accounting between the partners. If, then, the money on the judgment was paid by Flint to the bank, at or before the assignment of the judgment to the plaintiff, the plaintiff acquired no title to it, except such as Flint had, and by the payment it was satisfied, as the plaintiff had notice. If the money

was not paid by Flint until the 11th of April, 1864, still, as the bank had reserved the liability of Flint, it had the right to receive payment from him, notwithstanding its assignment, and the payment by Flint equally discharged and satisfied the judgment against the other parties. The judgment was satisfied as to the other parties, by the payment by Flint either before or after the assignment, because in either case the bank had a right to receive the money, and it was the reception of the money from Flint which satisfied and extinguished the judgment against the other parties.

The execution and delivery of the satisfaction-pieces, both bearing the same date, and probably both delivered to Flint at the same time, did not injure the plaintiff. The judgments were, in fact, satisfied by the payment, and the plaintiff having paid no value to the bank, having purchased the judgments from Flint, one of the defendants, and with full notice of the material facts, and having consented that the bank should reserve the liability of Flint, was not injured by the reception of the payment from Flint, which payment was the circumstance which in fact satisfied the judgment as to the other parties, and legally prevented the plaintiff from enforcing the same, as against the parcel of real estate of which Goddard was seized in 1866.

If we are correct in the view we have taken of the relative rights of the parties to the note on which the two judgments were recovered, Goddard, on showing the true state of facts, could have prevented a sale of his real estate on the judgment which had been satisfied.

The defendants' counsel makes other points against the plaintiff's right to recover, but it appears to us that the foregoing reasons are sufficient, and without examining the other objections, we hold that the judgment must be reversed on the merits.

Judgment should be reversed and new trial ordered, costs to abide the event.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Judgment reversed, new trial ordered, costs to abide the event.